## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### WEST PALM BEACH DIVISION

### CASE NO.: 9:24-CV-80733

**DEREK STRINE,**

                **Plaintiff,**

**v.**

**THE UNITED STATES CENTER**
**FOR SAFE SPORT,**

                **Defendant.**

_____/

### COMPLAINT

Plaintiff Derek Strine, as and for his Complaint against The United States Center for Safe Sport ("The Center")[1], states as follows:

### Allegations Common to All Claims

### Nature of the Action

1.      Plaintiff is in the midst of an administrative enforcement action, and herein challenges the constitutional authority of The Center to proceed with that action.   The underlying matter concerns the improper expansion and exercise of subject matter jurisdiction by The Center to govern matters beyond sport, such as herein, the intimate contact between adults that did not occur within sport and did not involve a professional or amateur relationship regarding sport. In essence,

_____

[1] "The Center" is sometimes used interchangeably with the moniker "SafeSport" in various opinions and proceedings throughout the United States.

Complaint
Derek Strine v. The United States Center for Safe Sport

Plaintiff challenges the constitutionality of The Center's claim to possess unlimited jurisdiction to govern all aspects of Plaintiff's lifetime activities and curtail Plaintiff's core, fundamental constitutional rights to freedom of expression, freedom of association, and freedom of movement. Such claims are beyond the statutory review scheme of The Center, are collateral to the underlying factual issues currently disputed before The Center, and are outside of The Center's expertise. The Center's self-proclaimed freedom from all judicial oversight renders the actions taken and currently in process by The Center against Plaintiff unconstitutional. Plaintiff therefore herein seeks declaratory and injunctive relief to curtail the improper subject matter jurisdiction claimed by The Center over the specific matters herein.

## The Parties

2.      Plaintiff Derek Strine is a citizen of the United States and a resident of the State of Florida. Mr. Strine owns a particular horse show venue grounds in Florida, and owns various competitive show horses.   Mr. Strine does not ride competitively, nor coach, nor train horses.

3.      Defendant The United States Center for Safe Sport is a not-for-profit corporation, incorporated in the State of Colorado, with its principal place of business located at 385 S. Colorado Blvd, Building A, Suite 706, Denver, Colorado 80222.   Established in 2018 upon the passing of the 2017 Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act, which was itself an amendment to the Ted Stevens Olympic and Amateur Sports Act (the "Ted Stevens Act" codified at , 36 U.S.C. § 220501 et seq.), The Center claims exclusive jurisdiction to review allegations of sexual abuse and misconduct within U.S. Olympic or Paralympic organizations and within what it self-defines the "Olympic Movement."   The Center

Complaint
Derek Strine v. The United States Center for Safe Sport

exercises personal jurisdiction over both the United States Olympic and Paralympic Committee ("USOPC") and all sport-specific national governing bodies ("NGBs"), under a claim of subject matter jurisdiction over sports included in the Olympics (the "Olympic Movement"), and those members who join those bodies. The Center exercises legislative and adjudicatory powers over USOPC, NGBS, and members thereof, who are deemed "Participants" in the Olympic Movement.

4.      Various NGBs enforce rulings and decisions of The Center, through reciprocal provisions in their respective bylaws via a 2018 Master Services Agreement, by which the NGBs devolved to the Center their investigation, adjudication, and enforcement of any violations of The Center's SafeSport Code of Conduct (the "Code"), which The Center first promulgated on March 3, 2017, and which The Center amends from time to time.

5.      Non-parties the United States Equestrian Federation ("USEF") and the United States Eventing Association ("USEA") have both enforced a certain suspension given to Mr. Strine by The Center, subjecting Mr. Strine to the effects of the improper exercise of subject matter jurisdiction by The Center, thus affecting Plaintiff's core, private and fundamental Constitutional rights by restricting his freedom of speech, freedom of association, freedom of movement, and right to property.

<u>**Jurisdiction and Venue**</u>

6.      This Court has federal question authority pursuant to 28 U.S.C. § 1331 because Mr. Strine herein asserts claims arising out of the Constitution, in that The Center has (i) unconstitutionally imposed its subject matter jurisdiction over alleged events that are outside of the world of sport, (ii) improperly self-designated and expanded its subject matter jurisdiction beyond the authority granted under The Center's enabling statute without any legislative, judicial, or executive

Complaint
Derek Strine v. The United States Center for Safe Sport

oversight or ability by Mr. Strine to review such exercise; (iii) violated Mr. Strine's due process rights to a hearing prior to being subject to Temporary Measures affecting his core, fundamental constitutional rights, and (iv) has unconstitutionally forced Mr. Strine to be subject to its adjudicatory process, which injury occurs here and now and is not possible to remedy after those proceedings have occurred.  Those acts trigger Article III review. Jurisdiction is also proper pursuant to 28 U.S.C. § 2201 et seq. because the parties are in dispute about their rights, an actual case and controversy exists, and they seek declaratory relief herein.   To the extent The Center is considered an agency, the acts and omissions of The Center are also subject to judicial review by this Court pursuant to 5 U.S.C. §§ 702, 703, and 706.   The Court separately possesses diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

7.     Venue in this District is proper pursuant to 28 U.S.C. § 1391 in that this is a judicial district in which a substantial part of the events or omissions giving rise to the claims herein occurred, and is also where Defendant is subject to the Court's personal jurisdiction with respect to such action. Venue is specifically appropriate under 28 U.S.C. § 1391(a), (b)(2), (b)(3), (c)(2) and (d).

## **Factual Background**

8.     Plaintiff Derek Strine is a lifelong businessman and real estate investor, who was exposed to world of horse sport when his daughter, Katie, began riding in the equine discipline of eventing.[2] At that time, Mr. Strine invested in and developed a new eventing facility in Florida, called Barnstaple South and began a business to develop horses into top eventing competitors.   Prior to

---

[2] Which sport involves the three disciplines of cross country jumping, dressage, and show jumping, all on the same horse over a period of days.

Complaint
Derek Strine v. The United States Center for Safe Port

that project, Mr. Strine had been involved in multiple aspects of real estate for several decades, as well as other business ventures.

9.    Some years later, Mr. Strine met E.D., an adult woman. At no time there was a business or personal relationship arising out of sport between those two individuals, neither was E.D. ever an employee, subordinate, contractor, or student to or of Mr. Strine at his facility or with regard to sport.

10.    In November of 2019, E.D. agreed to go to dinner with Mr. Strine and later accompanied Mr. Strine to his home, where they engaged in consensual intimate relations.

11.    At no time was there was a business or personal relationship arising out of sport between those two individuals, neither was E.D. ever an employee, subordinate, contractor, or student to or of Mr. Strine at his facility or with regard to sport or the Olympic Movement

12.    Almost 4 years later, on or about September 21, 2023, Mr. Strine received a Notice of Allegations and Imposition of Temporary Measures ("NOA") from The Center via email.

13.    The NOA was dated September 21, 2023, and through the NOA, Mr. Strine for the first time learned that E.D. had recently made a complaint to The Center about their 2019 intimate relations, now claiming the relations were not consensual.

14.    The Center alleged that Mr. Strine, as a defined "Participant" under its Code by virtue of being a member of USEF and USEA,[3] which were NGBs which had agreed to allow The Center, under a Master Services Agreement, to govern the conduct of their respect members.

---

[3] Mr. Strine was essentially a business member, not a riding nor competing member.

Complaint
Derek Strine v. The United States Center for Safe Sport

15.     Without any prior notice nor a hearing afforded Mr. Strine, nor without any assessment as to whether The Center has subject matter jurisdiction over events allegedly occurring between two adults outside of sport, The Center immediately suspended Mr. Strine's business activities as they related to sport.

16.     The NOA, by imposing the following "Temporary Measures" immediately restricted Mr. Strine's core and fundamental constitutional personal liberties as follows:

> *Temporary Suspension*
> Beginning on September 21, 2023 Respondent is prohibited from participating, in any capacity, in any event, program, activity, or competition authorized by, or under the auspices of of the United States Olympic & Paralympic Committee (USOPC), the National Governing Bodies recognized by the USOPC, a Local Affiliated Organization as defined by the Code, or at a facility under the jurisdiction of same.
>
> *No Contact Directive*
> During the pendency of the Center's investigation, Respondent is prohibited from communicating in any with E.D. Communication includes, but is not limited, to contact by phone, through email or text message, via any social media application or other electronic medium, in-person interactions (verbal and non-verbal), or contact facilitated through a third party.   Should Respondent and E.D. happen to be in the same place at the same time, in addition to refraining from any form of contact, Respondent must make reasonable efforts to keep their distance and avoid getting too close to Claimant(s).   Please contact the Center if you have any questions about this Directive.

17.     Thereafter, another adult woman, V.D., made essentially the same factual claim against Mr. Strine, sometime after their initial consensual intimate encounter.

18.     At no time was there was a business or personal relationship arising out of sport between those two individuals, neither was V.D. ever an employee, subordinate, contractor, or student to or of Mr. Strine at his facility or with regard to sport  or the Olympic Movement

19.     Mr. Strine thereafter received a second NOA with the same Temporary Measures.

Complaint
Derek Strine v. The United States Center for Safe Sport

20.     Mr. Strine was also immediately ordered to keep his distance and avoid getting too close if he found himself in the same place at the same time as E.D.[4] and later of V.D.

21.     Both cases involved belated claims that consensual intimate relations were not consensual. But in neither case were the parties involved in sport, was there an employer-employee or teacher-student, coach-rider, or any other imbalance of power between Mr. Strine and the complainants.

22.     In early January, 2024, Mr. Strine received a third NOA, claiming that he had attended a horse show, in violation of the Temporary Measures imposed by the first two NOAs.   The Temporary Measures against Mr. Strine were continued under this NOA.

23.     Mr. Strine responded to The Center's third NOA by stating that he had gone to a public restaurant, which happened to have a view of a horse show grounds, but that he had not participated in any way, in any horse show.

24.     Nevertheless, The Center maintained the third NOA and the continuation of the Temporary Measures was appropriate because of Mr. Strine's conduct by dining at that restaurant.   Mr. Strine was not given a hearing before the continuation of the Temporary Measures.

25.     Thereafter, a fourth NOA amended the first two NOAs, and therein The Center claimed that Mr. Strine had utilized an intoxicating substances as part of the conduct alleged by E.D. and V.D.   The Center continued the Temporary Measures imposed by the first three NOAs as a result. Mr. Strine again was not given a hearing before the continuation of the Temporary Measures.

---

[4] In early May 2024, E.D. settled a civil suit she had filed against Mr. Strine which arose out of the same underlying facts.   To Plaintiff's knowledge, E.D. has not informed The Center of this settlement, although it is *not* confidential.

26.     None of the NOAs contained any supporting documentation, nor copies of the underlying complaints to The Center. The NOAs merely provided the scantest of summary of the alleged events, which also prejudices Mr. Strine's ability to cogently respond to those NOAs. Under the Code, The Center considers all of its documents confidential, and while Plaintiff disagrees with that procedure, for the moment, they are not attached hereto, though their contents are incorporated by reference.

27.     The Temporary Measures imposed by the NOAs have, and continue to have, an immediate impact upon Mr. Strine's core, fundamental constitutional rights.

28.     Further, before any notice to him, and without any opportunity to defend himself on a hearing, Mr. Strine has been placed on a list of persons banned by The Center and subject to SafeSport restrictions (the "List") on a public website maintained on a public website, accessible to the public. See 36 U.S.C. §220541(a)(1)(G) (The Center shall "publish and maintain a publicly accessible internet website that contains a comprehensive list of adults who are barred by the Center."). This has occurred all without a hearing, without any allegation that the underlying facts occurred within sport.

**I.      The Center has caused Here-and-now injuries to Mr. Strine.**

29.     Through the Temporary Measures, inclusion on the List, and being subjected to the procedures by The Center, Mr. Strine is being injured here and now.

30.     First, Mr. Strine should not be subject to the unconstitutionally-broad exercise of subject matter jurisdiction by The Center, which has placed Mr. Strine on the List and is subjecting him to requirements to undergo hearings and participate in Arbitration.

31.     Second Mr. Strine's freedoms of liberty, speech and association have been unconstitutionally abridged by The Center. While The Center uses the term "participate" in its restrictions, the third NOA (regarding dining at a public restaurant) makes it clear that The Center takes the position that Mr. Strine is no longer able to travel and attend public places of accommodation, regardless of the presence of either E.D. or V.D.

32.     This curtailment of his freedom of expression, freedom of association, and his right to liberty prevented Mr. Strine not only from speaking with friends and business associates, but from conducting his business, from being at his own facility, and from entering in and attending the horse show facilities at the World Equestrian Center ("WEC"), in Ocala, Marion County, Florida, and the Winter Equestrian Festival ("WEF") in Wellington, Palm Beach County, Florida.[5]

33.     Mr. Strine has been deprived of his own property rights in that Mr. Strine can no longer be present anywhere where a horseshow might be taking place, even at his own facility, Barnstable South, for any activity or competition sanctioned by a NGB.

34.     Mr. Strine's international travel has been abridged in that after the first NOA, Plaintiff was unable to obtain credentials to attend the 2023 Pan American Games in Santiago, Chile, to where he would otherwise travel, to attend and associate with personal and business associates.

35.     Mr. Strine's in-state freedom has been unconstitutionally abridged as well.  Just recently, on June 5, 2024, the State of Florida, through its lessee, has imposed a ban on the presence of

---

[5] These are the two largest sport horse competition facilities in Florida, and indeed, in the United States.   For example, WEF is the longest-running and largest equestrian sport show facility in the United States, while WEC, located nearby Mr. Strine, is the newest but largest such facility in central and norther Florida.   Both are facilities of public accommodation, welcoming not only members of the equestrian community, but members of the public.

Complaint
Derek Strine v. The United States Center for Safe Sport

anyone on the List from a state park during a horse show.   Essentially, Mr. Strine, a taxpayer in the State of Florida, is now being prevented from entering upon Florida state park lands.

36.     The rights and ability of Mr. Strine to speak and associate freely have also been curtailed by The Center, which, under its Code, seeks to prohibit Mr. Strine to speak about or defend himself from the allegations and from his inclusion on the List.

37.     As a result, USEA has withdrawn USEA approval for at least three eventing competition dates from Mr. Strine, and further USEA will not allow any third party lessee to hold any eventing competitions at Mr. Strine's Barnstable South eventing competition grounds.   This USEA ban has had an enormously detrimental effect upon the value of Mr. Strine's Barnstable South business and real estate holdings, depressing their value by at least $ 1.5M.   The cloud of the unconstitutionally-imposed ban on Mr. Strine has thus adversely affected Mr. Strine's property rights and will continue to do so.

38.     Further, the association of Mr. Strine with the List has interfered with Mr. Strine's ability to freely conduct commerce.   Plaintiff has seen at least three recent horse transactions canceled or not close because of the negative innuendo which his name's inclusion on the List implies.

39.     Mr. Strine has also been prevented from marketing eventing horses his Barnstable program has developed, because he cannot attend events and locations where such business is ordinarily conducted.

40.     Mr. Strine's core, fundamental constitutional right to property through freedom to conduct his business has thus immediately been affected by the Temporary Measures of the NOAs.   Mr. Strine has been suddenly cut off from access to his friends and business associates at his own facility, WEC and WEF, state lands, foreign venues, and other facilities and locations.

Complaint
Derek Strine v. The United States Center for Safe Sport

41.     The stigmata of being on the list, as well as being subject to the disciplinary procedures and proceedings of The Center, have thus adversely affected Mr. Strine core, fundamental constitutional rights.

42.     Such curtailment of Mr. Strine's core and fundamental constitutional rights to freedom of speech, freedom of association, and liberty - to freely travel and attend public facilities - was undertaken without any prior notice and a hearing to Mr. Strine.

43.     Mr. Strine's core, fundamental constitutional right to property through freedom to conduct his business was immediately affected by the Temporary Measures of the NOAs.   Mr. Strine was suddenly cut off from access to his friends and business associates at his own facility, WEC and WEF.

44.     As a result of the restrictions put in place against Mr. Strine by the first NOA and continued under the NOAs,

45.     Through the NOAs, The Center claims discretionary *personal* jurisdiction over Mr. Strine because he was a member of USEF, and has placed the restrictions against Mr. Strine through a statement of subject matter and personal jurisdiction, to wit:

> **Jurisdiction**
> The Center may exercise jurisdiction over and investigate alleged misconduct when those allegations concern a Participant.   Per the Code, a Participant is any individual who is seeking to be, currently is, or was at the time of an alleged Code violation: (a) a member or license holder of an NGB, LAO, or the USOPC; (b) an employee or board member of an NGB, LAO, or the USOPC; (c) within the governance or disciplinary jurisdiction of an NGB, LAO, or the USOPC; and/or (d) authorized, approved or appointed by an NGB, LAO, or the USOPC to have regular contact with or authority over Minor Athletes.   *See* the Code at Section VIII.J.
>
> As you currently are a member of USEF, you are a Participant and thus subject to the disciplinary jurisdiction of the Code.   *See* the Code at Section VVV.J (2022).

Complaint
Derek Strine v. The United States Center for Safe Sport

46.     These clauses setting forth The Center's claims of subject matter jurisdiction and personal jurisdiction are present, upon information and belief, in all of the recent NOAs against various Respondents, not just Mr. Strine.

47.     Mr. Strine does not herein contest the personal jurisdiction of The Center; rather Plaintiff contests the unconstitutional manner in which The Center is attempted to exercise **subject** matter jurisdiction over the matters involving the NOAs against Mr. Strine.

48.     Through the NOAs, The Center is unconstitutionally exercising of unlimited subject matter jurisdiction over any act by a Participant, or allegation against Mr. Strine, and other Participants, to abridge their core constitutional rights, no matter whether the underlying facts involve sport.

49.     This attempted exercise of unlimited subject matter jurisdiction by The Center is far beyond the Congressional authority delegated to The Center by its organic enabling statute, the Ted Stevens Act, 36 U.S.C. 220541 *et seq.* as amended.

50.     The issue Plaintiff raises herein is that the underlying allegations between adults outside of sport did not have anything to do with sport and are not within the subject matter of The Center.

51.     In essence, The Center has, through the NOAs, claims it possesses **unlimited and unreviewable** subject matter jurisdiction over any individual who is, in the case of Mr. Strine, a member of an NGB, and The Center further claims that the nature of the alleged misconduct does not matter.   Finally, the Center claims that The Center's determinations of subject matter jurisdiction are not reviewable, except by itself.   See Code § IV.C. ("The Center may reassess its jurisdictional decision at any time.").

52.     Herein, Mr. Strine is challenging The Center's subject matter jurisdiction over the events described in the NOAs because The Center's Congressional mandate, and stated Authority of the

Complaint
Derek Strine v. The United States Center for Safe Sport

Code, is strictly limited to the ***subject of matters involving "sport***."   This limitation on the subject

matter jurisdiction of The Center is likely why, under Code § IV.C, "[t]he Center may reassess its

jurisdictional decision at any time."

**II.     The subject matter jurisdiction of The Center is strictly limited pursuant to the the Ted Stevens Act and its Amendments.**

53.     The Center is not an entity with unlimited subject matter jurisdiction. It was created by

Congress in 2018 as an amendment to the 1978 Ted Stevens Act, to ensure safety ***in sport***.

54.     While Congress first passed the Ted Stevens Act in 1978, which created the structure of

NGBs to govern the various sports in the United States, it was not until 2014 that the United States

Olympic and Paralympic Committee ("USOPC") incorporated The Center in Colorado.

55.     The legislative history of what came to be known as UNITED STATES CENTER FOR

SAFE SPORT AUTHORIZATION ACT OF 2017 in its later iterations (S. 534, previously H.R.

1426) stated that the "Purpose of the Bill" was "The ***purpose*** of S. 1426, the United States Center

for Safe Sport Authorization Act of 2017, is to clarify that a central purpose of the United States

National Olympic Committee (USOC) is to promote a safe environment ***in sports*** …."

56.     The stated legislative history of H.R. 1426, which was merged into a very similar bill,

S.534, which passed the Senate on November 14, 2017, recounts that "On May 17, 2017, the

Committee held a hearing entitled ``Current Issues in American Sports: Protecting the Health and

Safety of American ***Athletes***,'' during which Committee members heard testimony regarding The

Complaint
Derek Strine v. The United States Center for Safe Sport

Center's efforts to address incidents of sexual abuse ***within the Olympic*** movement…." [6] [emphasis added].

57.     Thereafter, in 2018, by and through by 36 U.S.C. §220541(a)(1)(A) (2017), Congress expressly defined the subject matter jurisdiction of The Center, to wit:

> Designation of United States Center for SafeSport
>
> (a) Duties of Center.-
>
> (1) In general.-The United States Center for SafeSport shall-
>
> (A) serve as the independent national safe sport organization and be recognized worldwide as the independent national safe **sport** organization for the United States; and
>
> (B) exercise jurisdiction over the corporation and each national governing body with regard to safeguarding **amateur athletes** against abuse, including emotional, physical, and sexual abuse, **in sports**;
>
> (C) maintain an office for education and outreach that shall develop training, oversight practices, policies, and procedures to prevent the abuse, including emotional, physical, and sexual abuse, **of amateur athletes participating in amateur athletic activities** through national governing bodies; ….   [emphasis added]

58.     When this enabling law that created The Center was passed in March, 2017, The Center was to exist and be governed by the United States Olympic and Paralympic Committee ("USOPC"). Thus The Center was, by legislative intent and express language, created to ***govern conduct in sport***.

---

[6] Source: https://www.congress.gov/congressional-report/115th-congress/senate-report/443/1

Complaint
Derek Strine v. The United States Center for Safe Sport

59.     The Center eventually promulgated is own internal regulations, the Code, on March 3, 2017. The presently-effective version of The Code has been effective since April 1, 2023.

60.      At about that same time in 2017, USOPC reassessed its relationship with The Center, creating a Master Services Agreement, by which each NGB agreed to devolve to The Center investigation and adjudication of alleged violations of the Code, as well as the legislative powers to promulgate and amend the Code, which automatically becomes part of the Ted Stevens Act pursuant to 36 U.S.C. § 220541(b).   There is also no provision allowing public comment before such rules are transmuted into law.

### A. The 2018 Amendment clarified The Center's subject matter jurisdiction was limited to sport.

61.     In early March 2018, Congress passed the United States Center for Safe Sport Authorization Act of 2018 (the "2018 Amendment"), which amended the Ted Stevens Act in several areas.

62.     First, the 2018 Amendment made Defendant The Center independent from Defendant USOPC and gave Defendant The Center considerable legislative, regulatory, administrative, and judicial powers.

63.     Second, the 2018 Amendment clarified the limited subject matter jurisdiction of The Center by expressly stating the legislative purpose of The Center in that The Center ***"shall ... serve as the independent national safe sport organization*** and be recognized worldwide as the independent national safe sport organization for the United States," and ***"exercise jurisdiction*** over the [USOPC], each national governing body, and each paralympic sports organization ***with regard to***

Complaint
Derek Strine v. The United States Center for Safe Sport

*safeguarding athletes against abuse, including emotional, physical, and sexual abuse, in sports."* 36 U.S.C. § 220541 (a)(l)(A)-(B). [emphasis added].

64.     Thus, the 2018 Amendment expressly restricted The Center's subject matter jurisdiction to sport because the legislative purpose of The Center was to "*safeguard athletes".*

65.     Third, the 2018 Amendment impressed due process requirements upon The Center, requiring The Center *"maintain an office for response and resolution* that *shall establish mechanisms that allow for the reporting, investigation, and resolution* ... *of alleged sexual abuse in violation of The Center's policies and procedures,"* and *"ensure that the [these] mechanisms ... provide fair notice and an opportunity to be heard ...."* 36 U.S.C. § 220541(a)(l)(D)-(E). [emphasis added].

66.     However, when the 2018 Amendment was passed, the *subject matter* over which The Center was given authority by Congress ***remained sport***[7] under 36 U.S.C. § 220541(a)(1).

---

[7] As part of that of that 2018 Ted Stevens Act amendment, the Center was required to provide due process to all named Respondents. See 28 U.S.C. § 220541(a)(1)(H) ("ensure that any action taken by The Center against an individual under the jurisdiction of The Center, including an investigation, the imposition of sanctions, and any other disciplinary action, *is carried out in a manner that provides procedural due process* to the individual....). [emphasis added].

Complaint
Derek Strine v. The United States Center for Safe Sport

**(1)    The Center is acting as if it is beyond review.**

67.    Thus, through the 2018 Amendment, Congress gave federal regulatory and enforcement authority over sport to The Center, thus effectively creating a private organization with powers usually reserved to the federal government under the Vesting Clauses.

68.  The 2018 Amendment also devolved to The Center the ability to make law, by providing that when The Center adopted policies and procedures in the Code, those policies and Procedures "shall apply as though they were incorporated in and made a part of section 220524 of this title." 36 U.S.C. § 22054l(b).

69.    Consequently, through the 2018 Amendment, The Center now promulgates policies and procedures are automatically codified, without public comment or federal review, through 36 U.S.C. § 220541(b), under 36 U.S.C. § 220524, upon being issued by Defendant SafeSport, without ever being reviewed by Congress or other branch of federal government, nor without any other oversight.

**(2)    The Ted Stevens Act and the exercise of regulatory power by The Center of that Act both violate the private nondelegation doctrine.**

70.    The Center interprets and applies the 2018 Amendment to violate the private nondelegation doctrine.   That doctrine represents the concept that the Vesting Clauses of the Constitution place all of the federal government's power in the three branches of government, such that a private organization or agency created by Congress cannot usurp such power.

71.    The Vesting Clauses make clear that *all* federal governmental power is vested in, and *only* in, the three branches, and accordingly, the Supreme Court has long enforced the private non-delegation doctrine.   See, e.g.: *A.L.A. Schechter Poultry Corp.* v. *United States*, 295 U.S. 495, 537

(1935) (it is "obvious" that "a delegation of legislative power" to private groups "so as to empower them to enact the laws they deem to be wise and beneficent" is "unknown to our law, and . . . utterly inconsistent with the constitutional prerogatives and duties of Congress."

72.     Accordingly, private entities such as The Center are not vested with any power of the United States, whether legislative, executive, or judicial. As a result, "[w]hen it comes to private entities[,] . . . there is not even a fig leaf of constitutional justification.") *Dep't of Transp.* v. *Ass'n of Am. R.Rs.*, 575 U.S. 43, 62 (2015) ("*Amtrak*") (Alito, J., concurring); *see also id.* at 88 (Thomas, J., concurring in the judgment).

73.     Mr. Strine's private nondelegation challenge is thus: Congress has not authorized The Center to regulate conduct outside of sport.   The Center claims it has Congressional authority to so act in such a broad jurisdictional manner, and if correct, then the Congressional delegation of power to The Center is constitutionally invalid.   If Congress did not so delegate such broad subject matter jurisdiction to The Center, then The Center's actions beyond Congressional delegation of power are unconstitutionally over-broad.

74.     The 2018 Amendment devolved rule and policy making of the NGBs to The Center.   That devolvement leaves all the policy choices to The Center and therefore there is no meaningful legal constraint on The Center's rulemaking and enforcement authority.   Congress provided a list of broad regulatory tasks in 28 U.S.C. § 220541 et seq., without putting in place any statutory review scheme.

75.     The portion of the Ted Stevens Act which automatically elevates The Center's rule-making to the status of law (28 U.S.C. § 220541(b)) is unconstitutional because of its structure. There is no federal review – anything The Center puts into its Code, such as its claim of broad subject

matter jurisdiction, automatically becomes law without any review. There is no public comment period.   The Center simply promulgates the rules and procedures, then points to its promulgated Code as justification for its decisions, and all of this is occurring outside of any structure of federal review.   Even the statutory review scheme – via a private arbitration – is devoid of federal review unless and until appeal to federal court occurs, which is not a cost many respondents to The Center can burden.

76.      The Center thus exercises its regulatory power in violation of the nondelegation doctrine. Since 2018, The Center pronounces law by promulgating policy and procedure, without any judicial or legislative or executive oversight, and that policy and procedure becomes law.

77.      The Center has become a private organization with legislative powers beyond federal regulation and oversight. The only federal oversight of The Center is a requirement to submit its annual fiscal reports to the General Accounting Office ("GAO").

78.      It is notable that the GAO itself views The Center's Congressional Authority as being limited to the subject matter of athletes in sport. See. e.g.: United States Government Accountability Office December 18, 2020 correspondence to The Honorable Charles E. Grassley, President Pro Tempore, United States Senate.[8]

79.      The Center's self-proclaimed unlimited subject matter jurisdiction is unconstitutional and not consistent with the legislative intent of The Center's enabling statute.

---

[8] Found at:
https://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=&ved=2ahUKEwjD1Pz8jeOEAxWtgoQIHUQ-Dfc4FBAWegQIDxAB&url=https%3A%2F%2Fwww.gao.gov%2Fassets%2Fgao-21-128r.pdf&usg=AOvVaw0ztZwFTSwJSCiExx_1EGec&opi=89978449

Complaint
Derek Strine v. The United States Center for Safe Sport

80.     In 2018, Congress did not intend to imbue The Center with unlimited subject matter jurisdiction.   Rather, The Center was only "empowered by Congress to exercise jurisdiction over" both the United States *Olympic Committee* (USOC) and *all its sport-specific* national governing bodies." *Gonzalez v. U.S. Ctr. for SafeSport*, 374 F. Supp. 3d 1284, 1288 (S.D. Fla. 2019) [emphasis added].   The Center's stated mission is restricted to was to safeguard "*amateur athletes* against abuse, including emotional, physical, and sexual abuse, *in sports*." 36 U.S.C. § 220541(a)(1)(B).

81.     In that context, The Center must confine its subject matter jurisdiction to those matters within sport, and may not unconstitutionally enlarge its claimed jurisdiction, and abridge core constitutional rights, to cover any and all conduct by a NGB member.

### B. The 2020 Amendment further ratified the limited subject matter jurisdiction of The Center.

82.     In 2020, Congress further amended the Ted Stevens Act with the Empowering Olympic, Paralympic, and Amateur Athletes Act of 2020 (the "2020 Amendment").   Pursuant to the 2020 Amendment, Congress further narrowed the scope of permissible action by The Center, imposing a due process requirement under new subsection 36 USC § 22054l(a)(l)(h), which now required The Center investigation and disciplinary actions to be "carried out in a manner that provides procedural due process to the individual" to an accused Participant.

83.     The 2020 Amendment was thus a further curtailment of the statutory scope of The Center's activities.   The Center's subject matter jurisdiction was not broadened by the 2020 Amendment, and thus remained, as it had been, within matters *in sport, about athletes*.

Complaint
Derek Strine v. The United States Center for Safe Sport

84.      Throughout the various years of amendments to the Ted Stevens Act, The Center revised its Code several times. Through the present 2023 iteration of its Code, presently effective, at Section IV The Center self-defines its subject matter jurisdiction over nonconsensual sexual contact by a Participant as being *exclusive* ("**IV. JURISDICTION OF THE CENTER   A. Exclusive Jurisdiction.** The Center has the *exclusive* jurisdiction to investigate and resolve allegations that a Participant engaged in one or more of the following:….") [emphasis in original].

85.      The Center thus claims that it's actions, including its self-definition of subject matter jurisdiction, are excluded from Article III judicial review, as well as executive and legislative review.   That is not the case.

### C. The Underlying Conduct Does Not Arise Within the Authorized Subject Matter Jurisdiction of The Center.

86.      The NOAs allege only that intimate relations occurred between Mr. Strine and two different adult women, E.D. and V.D., which women now claim was nonconsensual.

87.      Consequently, without a prior hearing on the merits, and without assessment whether the conduct alleged in each case falls within the purview of the enabling statute, The Center has now unconstitutionally limited the core, fundamental constitutional rights of Mr. Stine, through the Temporary Measures imposed against Mr. Strine.   For clarity, the NOAs which impose the Temporary Measures do *not* allege conduct involving or occurring within sport, do *not* involve athletes, coaches, teachers, *nor* otherwise involve any imbalance of power or other unbalance relationship within sport.

88.      The subject matter jurisdiction of The Center, its authority to exercise judicial power in a given subject area or dispute, *is distinct* from The Center's exercise of its authority *within a given*

*subject area* or dispute.   While The Center may exercise its Congressional authority in disputed concerning sport, The Center may not exercise its jurisdiction in matters outside of its Congressional authority, which authority in The Center's case, *is limited to matters involving sport*.

### D. The Center's claim of exclusive, non-reviewable subject matter jurisdiction is neither Constitutional, nor logical.

89.     The matters raised by the NOAs do not fall within the subject matter of The Center as authorized by Congress. 28 U.S.C. §220541(a)(1). None of the allegations by E.D. and V.D., respectively arise out of or in the context of sport or a business or personal relationship related to sport, nor occurred in a sporting facility or at a sporting event.

90.     Nevertheless, herein The Center has improperly inflated its subject matter jurisdiction far beyond The Center's subject matter jurisdiction as authorized by Congress. See S. REP. NO. 115-443, at 1 (2018) and 36 U.S.C. § 220541(a)(1)(A)&(B).

91.     To follow The Center's logic to its absurd conclusion, The Center claims subject matter jurisdiction over all conduct by anyone who is fits the definition of a "Participant" and would be compelled to exercise jurisdiction over every allegation of misconduct by one person against a another, when that actor happens to also be defined as a Participant, regardless of the nature, location, or context of the alleged act or omission.

92.     In Mr. Strine's case, none of the allegations by either E.D. nor V.D. involved a sport or amateur athletics or a relationship involving same.   Further, while E.D. was a USEF member at the time of the alleged event, there was no sort of relationship involving sport, nor employment, of any kind between these two adults.   With respect to V.D., she was not a member of USEF nor

Complaint
Derek Strine v. The United States Center for Safe Sport

any other sport NGB at the time of the alleged event, there was no sort of relationship involving sport, nor employment, of any kind between these two adults.

93. However, applying the attenuated reasoning behind The Center's present jurisdictional decision over the NOAs, the legislative intent and express restrictions upon subject matter jurisdiction do not apply to The Center.   Under The Center's pronouncements of its own subject matter jurisdiction, every civil and criminal, and administrative proceeding against such a Respondent who happens to fit the definition of Participant would form the basis for the imposition of Temporary Measures and discipline by The Center.   This is because the Code, in footnote 2 to § IX, so broadly defines Prohibited Conduct as "alleged conduct [that] would have violated community standards and norms were generally expressed in then applicable criminal or civil statutes…."

94.    Such a broad definition sweeps in almost every type of alleged action by a Participant, including alleged acts far outside of the world of sport. See Code footnote 2 to § IX, *any* act or omission by a Participant that violates "community statutes and norms" would be within the subject matter jurisdiction of The Center, no matter its nexus with sport.

95.    The Center improperly claims overbroad, unconstitutional jurisdiction of such conduct, and The Center's right to impose measures affecting core, fundamental constitutional rights, by virtue of the definition employed under footnote 2 to Code § IX.   In the same vein, the alleged conduct between Respondent and both Claimants E.D. and V.D. did not arise out any sporting activity, nor "Imbalance of Power" as defined by the Code.

96.    More particularly, not only do the alleged acts arise between adults who are not involved at that time in any sport-related relationship or activity, the allegations within the Notices do not

Complaint
Derek Strine v. The United States Center for Safe Sport

involve a Power Imbalance between the Claimant and the Respondent.   Code § VIII.K defines "Power Imbalance" as existing under the "totality of the circumstances" where "one person has supervisory, evaluative, or other authority over another."    No such relationship existed between Respondent and either E.D., or V.D.

97.    The strict limit to The Center's subject matter jurisdiction is in fact supported by the very nature of the Temporary Measures imposed upon Mr. Strine on September 21, 2023, and continued thereafter under the subsequent NOAs.    Therein, the restrictions are expressly *limited to sports* ("Beginning on September 21, 2023, Respondent is prohibited from participating, in any capacity, in any event, program, activity, or competition **authorized by, organized by, or under the auspices of the United States Olympic & Paralympic Committee (USOPC), the National Governing Bodies** recognized by the USOPC, a Local Affiliated Organization as defined by the Code, or **at a facility** under the jurisdiction of the same."). [emphasis added].

98.    Thus, The Center has recognized that its own subject matter jurisdiction under the NOAs is limited to sports, yet The Center has chosen to violate its own rules by exercising jurisdiction over allegations which facts arise out of the non-sport context, and out of the non-Power Imbalance context.   This exercise of subject matter jurisdiction over the Notices is thus erroneous.

99.    The Code's distinction at §IV.A and B between The Center's exclusive jurisdiction and discretionary jurisdiction does not allow The Center to unconstitutionally expand The Center's subject matter jurisdiction beyond The Center's subject matter jurisdiction as authorized by Congress.   To read those sections otherwise would be to state that The Center now takes the place of the judiciary and law enforcement of all state and the federal law enforcement under §IV.A, and

Complaint
Derek Strine v. The United States Center for Safe Sport

that The Center can strip the jurisdiction of all state and federal law enforcement and judicial officers should it desire to exercise discretion under §IV.B.

100.    Rather, The Center's rules and policies must be read within the framework of the limits upon The Center to its subject matter jurisdiction. Code §IV.A & B must therefore be read within the boundaries of The Center's Congressional subject matter authorization, as seen in the legislative history and express words of the enabling statutes.

### III.    The Center has violated the due process requirements of the Ted Stevens Act, 36 U.S.C. §§ 220522(8) and 220541(a)(1)(H).

101.    The Center is aware of the existence of the Ted Stevens Act and its various amendments since the Act's effective date by Congress in April 1978. The Center is likewise aware that pursuant to Code § VII.B, and 36 U.S.C. § 220505(d)(1)(C), as the relevant NGB, USEF is reciprocally enforcing The Center's Temporary Measures against Mr. Strine.

102.    Therefore in this context, pursuant to 36 U.S.C. §§ 220522(8), and under 36 U.S.C. §§ 220541(a)(1)(H), The Center is required to provide "***fair notice and opportunity for a hearing*** to any amateur athlete, coach, trainer, manager, administrator, or official ***before*** declaring the individual ***ineligible to participate***" and "ensure that any action taken by The Center against an individual under the jurisdiction of The Center, including an investigation, the imposition of sanctions, and any other disciplinary action, is carried out in a manner that ***provides procedural due process*** to the individual, including, at a minimum … the ability to challenge, in a hearing or through arbitration, Temporary Measures or sanctions imposed by The Center."

103.    Stated another way, The Center's "acceptance of the adjudicative process for addressing allegations of sexual misconduct and abuse came with established legal due process duties and

Complaint
Derek Strine v. The United States Center for Safe Sport

responsibilities under the Ted Stevens Act, being a PDH requirement under Section 220522(a)(8)." *Giorgio,* supra, *14.

104.    "The passage of Section 220541(a)(1)(H) by Congress under the Ted Stevens 2020 Amendment made it clear that Congress **wanted the 'procedural due process' right of an accused protected** by [The Center]."   *Gigorio,* supra *14-15.   However, in the present case, The Center has imposed the Temporary Measures of the NOAs without affording Mr. Strine a pre-determination hearing ("PDH").   This is a particularly egregious deficiency of due process because, as discussed herein, the facts that the allegations concern conduct outside of the subject matter jurisdiction of The Center.

105.    The four NOAs have, without prior hearing, deprived Mr. Strine of his core constitutional rights of Mr. Strine, his freedom to travel to places of public accommodation, his freedom to associate, his ability to enjoy his own property, and his freedom of expression have all been significantly restricted by USEF through the Temporary Measures, all without any PDH, and all over conduct that did not concern sport and was between adults who did not have a professional nor amateur relationship within sport.

106.    The self-proclaimed right by The Center of exercise of such unlimited subject matter jurisdiction is unconstitutional, [9] and the exercise of this unfettered jurisdiction without due process of a prior hearing is also unconstitutional.

107.    To clarify, even if The Center's exercise of subject matter jurisdiction herein was found to be constitutional, Mr. Stine further takes the position that under 36 U.S.C. §§ 220522(8), and under

---

[9] The Center goes further in abridging Mr. Strine's due process rights, by refusing to allow Mr. Strine to stenographically record the proceedings, so that he might use that record on appeal.

36 U.S.C. §§ 220541(a)(1)(H) Mr. Strine should have been afforded is entitled to a hearing on the jurisdictional issue before the imposition of the Temporary Measures. Because Mr. Strine has not been afforded this PDH, The Center has violated the Due Process requirements under the aforesaid provisions of the Ted Steven Acts.

108.    The Center has unconstitutionally self-proclaimed unlimited subject matter jurisdiction over NGB members, which then has become law under 36 U.S.C. § 220541(b), and through that improper exercise, The Center has subjected Mr. Strine to unconstitutional adjudicatory and enforcement action.   Mr. Strine should not have to endure the proceedings before The Center, nor be on the List, because The Center is improperly construing its own subject matter jurisdiction to be overly-broad.

109.    The Center's policies and procedures under its Code have unconstitutionally deprived Mr. Strine of a right to be heard before The Center imposed and continued the Temporary Measures, severely curtailing Mr. Strine's core, fundamental constitutional rights. See, e.g.: *Giorgio, et al. v. United States Equestrian Federation*, American Arbitration Association Final Decision, December 27, 2023 *14 (considering a very similar discrepancy between the Code and the Ted Stevens Act and finding   "[b]ecause the *'opportunity to be heard'* wording [of Section 220541(a)(5)] did not track the exact '*opportunity for a hearing ... before declaring such individual ineligible to participate'* wording in Section 220522(a)(8), this discrepancy could easily be resolved in Claimants' favor by principles of statutory construction. See also *United States v. Banker,* 876 F.3d 530 (4th Cir. 2017) (recognizing that the Court should interpret statutes in *pari materia,* in a consistent manner in which adjacent statutory subsections that refer to the same subject matter are read harmoniously to ensure that a statutory scheme is coherent and consistent)."

Complaint
Derek Strine v. The United States Center for Safe Sport

110.    Consequently, The Center should not have exercised subject matter jurisdiction over the allegations by E.D. and V.D. of activities between adults outside of sport, and having unconstitutionally done so, The Center should have given Mr. Strine hearings before imposing and continuing the Temporary Measures.   By such actions The Center has deprived Mr. Strine of his protected core, fundamental rights to freedom of speech, freedom of association, and freedom of movement, as well as his constitutional right to due process.

111.    The Temporary Measures should therefore be lifted immediately, and the two complaints lodged with The Center dismissed.

IV.     **Mr. Strine is facing injury "here-and-now" by being subjected to unconstitutional adjudicative action by The Center.**

A. **Mr. Strine challenges The Center's improper exercise of subject matter jurisdiction.**

112.    Mr. Strine's challenges herein are not to any specific substantive decision, nor to the the commonplace procedures agencies use to make such a decision.   Rather, Mr. Strine challenges that The Center is wielding authority unconstitutionally through an improperly broad exercise of subject matter jurisdiction.

113.    The harm Mr. Strine alleges he is being subjected to the unconstitutional authority of The Center, by which The Center, unaccountable to anyone or anything when pronouncing its policies and procedures, is being subject to proceedings concerning matters not within the subject matter jurisdiction of The Center.   As set forth in more detail above, Mr. Strine is being harmed by having to appear in proceedings before The Center, which is unconstitutionally insulated from any review. While that harm may sound a bit abstract, our Supreme Court has made it clear that such a complaint is one of a "a here-and-now injury." *Axon Enterprise, Inc. v. Federal Trade Commission*, 143 S. Ct. 890, 903 (2023), citing   *Seila Law LLC v. Consumer Financial Protection Bureau,* 591 U. S., 140 S.Ct. 2183, 2196, 207 L.Ed.2d 494 (2020).

114.    Mr. Strine is facing injury here and now by being subjected to the unconstitutional adjudicative action through the issuance of the NOAs, imposition of the Temporary Measures, and imposition of the requirement that he must go through both a Temporary Measures hearing and then a private arbitration process within The Center, all to challenge the decisions of The Center, which The Center claims are beyond judicial review.

Complaint
Derek Strine v. The United States Center for Safe Sport

115.   In essence, Mr. Strine protests being exposed to the here and now injury of being subjected to an unconstitutionally structured decision making process by The Center.   Moreover, being subjected to that process, irrespective of its outcome, or of other decisions made within that process, is what harms Mr. Strine here and now.

116.   Mr. Strine has a right not to stand trial before The Center, and this right is effectively lost if judicial review is deferred until after Arbitration trial.   Mr. Strine will lose his right not to undergo the complained-of proceedings if he cannot assert that right until the The Center's proceedings are over.

117.   Mr. Strine's claim is about being subjected to illegitimate proceedings now, and that is a complaint for which a court of appeals can do nothing because a proceeding that has already happened cannot be undone. Judicial review of Plaintiff's structural constitutional claims would come too late to be meaningful to Mr. Strine.

**B.   Mr. Strine's claims are collateral to the issues in The Center's proceedings.**

118.   Herein, Mr. Strine challenges The Center's power to proceed against him at all, based upon the allegations in the NOAs, rather than actions taken in The Center's proceedings.   This makes Mr. Strine's challenge collateral to underlying proceedings.

119.   For clarity, Mr. Strine objects and challenges The Center's overly-broad claim of subject matter jurisdiction, the imposition of the proceedings against him, and of the right of an arbitrator to lead those proceedings.   His grievance is that, given the nature of the factual allegations, which do not involve sport, The Center has no jurisdiction over events and disputes between adults.   This grievance is separate from the merits of the underlying proceedings, and thus reviewable now,

given Plaintiff's here and now injuries.   Thus, Mr. Strine's claims herein are collateral to the merits of the underlying proceedings.

### C.      The Center has violated the private nondelegation doctrine.

120.    Further, by The Center pronouncing the extent of its subject matter jurisdiction through promulgation and interpretation of Section IV.B. of the Code, which automatically then became law through 36 U.S.C. § 220541(b) without further review, the Center is both delving into law making, while depriving the judicial branch of meaningful review of its actions. The latter is a violation of the private nondelegation doctrine inherent to our Constitution.

121.    The harm to Mr. Strine it is impossible to remedy once The Center's proceeding is over, which is when appellate review kicks in.   Should a court of appeals agree with Mr. Strine upon review of an adverse decision at The Center's Arbitration, then those proceedings would have violated the private nondelegation doctrine.   While a court could then overturn the Arbitration decision and vacate a corresponding Center Final Decision, that would not undo the harm to Mr. Strine caused by having been subjected to those proceedings in the first place.

122.    Mr. Strine's separation-of-powers claim is not about the possible outcome of the Arbitration at The Center.   Mr. Strine should not have to go through the entire process. Thus, Mr. Strine would have the same claim even if he wins or loses before The Center.

123.    For clarity, Plaintiff's claim is about being subjected to a constitutionally illegitimate proceeding, commenced by an unaccountable private organization wielding government-like powers   A court of appeals can do nothing should the Arbitration proceeding occur and be decided because such a proceeding that has already happened cannot be undone.   Thus, judicial review of Mr. Strine's constitutional claims would come too late to be meaningful.

Complaint
Derek Strine v. The United States Center for Safe Sport

**D.      Mr. Strine's Claims are Outside the Expertise of The Center.**

124.    As well, Mr. Strine's claims are outside The Center's expertise. Plaintiff's claims raise questions of administrative and constitutional law which are detached from considerations of policy of The Center.

125.    Plaintiff's claims distant from The Center's claimed area of competence and expertise. While The Center might know something about sports and safety, The Center possesses no expertise and knows nothing special about the proper exercise of subject matter jurisdiction and the the nondelegation doctrine

126.    Therefore, The Center is ill suited to adjudicate structural constitutional challenges to the legitimacy of its own proceedings, such as those maintained here by Mr. Strine.

127.    What makes the difference herein is the nature of the claims and accompanying harm that Mr. Strine is asserting.   Mr. Stine claims a here-and-now injury of being subjected to an unconstitutionally imposed decision making process of the NOAs, the Temporary Measures, and the need to seek and appear in an Arbitration.   Mr. Strine further complains that, regardless of the outcome of the Arbitration, being subject to this entire process harms him here and now because the underlying facts do not involve sport and safety in sport.

128.    Because of the exercise of improperly enlarged subject matter jurisdiction by The Center over the facts of the relevant NOAs herein, Mr. Strine is improperly exposed to the NOAs, the Temporary Measures, and the hearings.

129.    The Center is not only unconstitutionally exercising subject matter jurisdiction over the claims by E.D. and V.D. against Mr. Strine, The Center is also requiring Mr. Strine to undergo the expense and effort to face an Arbitration trial in an attempt to unwind the Temporary Measures.

Complaint
Derek Strine v. The United States Center for Safe Sport

130.  Mr. Strine has previously filed several requests with The Center, surfacing the lack of subject matter jurisdiction and other constitutional arguments for The Center to consider.   As of the filing of this Complaint, The Center has declined to revisit or change its initial jurisdictional determination (though empowered to do so under Section IV.C. of the Code ["C. Jurisdictional Reassessment. The Center may reassess its jurisdictional decision at any time."]).

131.    The within Complaint thus follows.

## Count I

### Declaratory Judgment

132.    Plaintiff repeats and realleges ¶¶ 1 through 131 of the Allegations Common to All Claims as if more fully set forth herein.

133.    The parties are in doubt and disagree concerning their respective rights under the Ted Stevens Act as amended, and the Code.

134.    In essence, Mr. Strine claims the right not to have to go to trial before The Center concerning the conduct that is the subject matter of the E.D. and V.D. complaints to The Center because such conduct is outside of The Center's subject matter jurisdiction.

135.    Plaintiff's "right not to stand trial" is subject to Article III review by this Court prior to The Center proceeding with its adjudicatory process.   See *Axon Enterprise, Inc. v. FTC,* 143 S. Ct. 890, 896 (2023) ("Seeking to stop the administrative proceedings, they instead brought their claims in federal district court.   The question presented is whether the district courts have jurisdiction to hear those suits—and so to resolve the parties' constitutional challenges to the Commissions' structure. The answer is yes.").

Complaint
Derek Strine v. The United States Center for Safe Sport

136.    Further, under the facts of this case, there is a "need to clarify the private non-delegation doctrine." *Texas* v. *Comm'r*, 142 S. Ct. 1308, 1308 (2022) (statement of Alito, J., joined by Thomas and Gorsuch, JJ., respecting the denial of certiorari).

137.    Therefore, there is a more bona fide, actual, present and practical need for a declaration of the Court as to the rights and remedies of the parties.

138.    The within Complaint raises a question that the court can answer regarding immunity, power, privilege, or right.

139.    Plaintiff doubts the question of immunity, power, privilege, or right being brought before the court.

140.    Mr. Strine should not be subject to the actions of The Center in the first place, and should not be required to go through the arbitration process. *Axon,* supra, 143 S.Ct. at 897 ("The ordinary statutory review scheme does not preclude a district court from entertaining these extraordinary claims.").

141.    The particular constitutional claims brought by Plaintiff are not of the type Congress intended to be reviewed within this statutory structure.   *Thunder Basin Coal Co. v. Reich*, 510 US 200, 212, 114 S.Ct. 771 (1994).

142.    To follow The Center's logic *ad absurdum* to its improper conclusion, The Center claims that its exercise of subject matter jurisdiction is self-determined by its Code, but that logic would mean that The Center claims its Code will foreclose all meaningful judicial review of claims of such constitutional magnitude as those brought by Plaintiff herein. *Thunder Basin,* 510 U.S. at 212-213, 114 S.Ct. 771.

143.    Congress did not intend The Center to be free from all judicial review.

Complaint
Derek Strine v. The United States Center for Safe Sport

144.     Plaintiff's claims herein address constitutional issues, and thus are wholly collateral to enabling statute's review provisions. *Thunder Basin,* 510 U.S. at 212, 114 S.Ct. 771

145.     Finally, Plaintiff's claims are outside The Center's expertise. *Id.*

146.     Congress rarely allows claims about agency action to escape effective judicial review. See, e.g., *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 670, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986).

147.     Because the claims raised by Mr. Strine herein sound in constitutional principles and allege deprivation of protected core rights, the statutory review scheme of the Code, in which the agency or private organization effectively fills in for the District Court, with the Court of Appeals providing judicial review, does not apply to this case.   Mr. Strine is entitled to judicial review now of his claims, before having to undergo further administrative process. *Axon,* supra, 143 S.Ct. at 900.

148.     Herein, Plaintiff charges The Center is wielding authority unconstitutionally in all or a broad swath of its work, and particularly in the case of subjecting Mr. Strine to its processes and adjudicatory functions. *Axon,* supra, 143 S.Ct. at 902.

149.     A district court has jurisdiction to adjudicate Plaintiff's sweeping constitutional claims. 28 U.S.C. § 1331; *Axon,* supra, 143 S.Ct. at 902.

150.  Mr. Strine is being subjected to a constitutionally illegitimate proceeding, wherein the subject matter jurisdiction of The Center has been unconstitutionally expanded, leading Mr. Strine to be subject to an unconstitutionally by illegitimate decision makers in the form the staff members who initially imposed the Temporary Measures, and then led by an arbitrator appointed to rule on a

review of the imposition of the Temporary Measures, triggered by Mr. Strine who has been forced to participate in proceedings before The Center to which he should not be subject.

151.    Once those proceedings have already happened, they cannot be undone, and judicial review of Plaintiff's constitutional claims would come too late to be meaningful. *Axon,* supra, 143 S.Ct. at 9023-904.

152.    Because of the constitutional nature of the claims and accompanying harm that Mr. Strine is asserting, and that Mr. Strine is being injured here-and-now by being subjected to the unconstitutional Center proceedings, no matter the outcome of those proceedings, judicial review and intervention in those proceedings are appropriate now, because Mr. Strine should not have to stand trial now.

153.    Mr. Strine should not have to defer judicial review until after the arbitration because his rights are effectively lost if review is deferred until after the arbitration, to wit: he loses his right not to undergo the complained-of proceedings if he cannot assert that right until after the proceedings are over. Therefore, a District Court can and should review Plaintiff's claims now and enjoin The Center's proceedings. *Axon,* supra, 143 S.Ct. at 904, 906.

154.    The claims Plaintiff has brought herein tests the constitutional propriety of Congress vesting administrative agencies with primary authority to adjudicate core private rights with only deferential judicial review at a later time.   *Axon,* supra, 143 S.Ct. at 904, 906. (Justice Thomas, concurring in result and reasoning ("…when private rights are at stake, full Article III adjudication is likely required. Private rights encompass the three absolute' rights, life, liberty, and property ….") [quotation marks and citation omitted].

155.    Plaintiff has therefore articulated a need for the within request for declaratory judgment.

Complaint
Derek Strine v. The United States Center for Safe Sport

156.    The declaratory judgment sought is not merely a solicitation for legal advice or sheer curiosity amongst the parties involved.

WHEREFORE, Plaintiff seeks declaratory judgement or such other remedy as the Court may deem proper, to resolve the rights and remedies of the parties under the Ted Stevens Act, as amended, and under the Code, including, but not limited to a declaration:

A. That the delegation of legislative, executive, and/or judicial authority to The Center is unconstitutional because it violates the nondelegation doctrine; and

B. That The Center's exercise of regulatory power herein is in violation of the nondelegation doctrine; and

C. That Plaintiff should have been afforded notice and a hearing before the imposition and continuation of Temporary Measures, pursuant to 36 U.S.C. § 220522(8); and

D. That the Temporary Measures imposed by The Center were void ab initio;

E. That The Center's scheme of a hearing only post-imposition of Temporary Measures is unconstitutional; and

F. Awarding Plaintiffs his costs associated with this action; and

G. Awarding such other and further relief as the Court may find just and appropriate.

Complaint
Derek Strine v. The United States Center for Safe Sport

## Count II

### Preliminary and Permanent Injunctions

157.    Plaintiff repeats and realleges ¶¶ 1 through 131 of the Allegations Common to All Claims as if more fully set forth herein.

158.    As set forth herein, non-parties USEF and USEA have both enforced a certain suspension given Mr. Strine by The Center, subjecting Mr. Strine to the effects of the improper exercise of subject matter jurisdiction by The Center, thus affecting Plaintiff's core, private and fundamental Constitutional rights by restricting his freedom of speech, freedom of association, right to property, and freedom of movement.

159.    Plaintiff is in the midst of an administrative enforcement action with The Center, and herein Plaintiff challenges the constitutional authority of The Center to proceed against him to subject him to both a Temporary Measures Hearing and a Final Hearing.

160.    By promulgating its Code, which self-defines the unlimited scope of its authority over almost all conduct by NGB members such as Mr. Strine, while claiming to be outside of review by legislative, judicial, and executive oversight, The Center violates separation-of-powers principles.

161.    The Center has (i) unconstitutionally imposed its subject matter jurisdiction over events that are outside of the world of sport, (ii) improperly self-designated and expanded its subject matter jurisdiction beyond the authority granted under The Center's enabling statute without any legislative, judicial, or executive oversight or ability by Mr. Strine to review such exercise; (iii) has violated Mr. Strine's due process rights to a hearing prior to being subject to Temporary Measures affecting his core, fundamental constitutional rights, and (iv) has unconstitutionally

Complaint
Derek Strine v. The United States Center for Safe Sport

forced Mr. Strine to be subject to its adjudicatory process, which injury occurs here and now and is not possible to remedy after those proceedings have occurred.   Those acts trigger Article III review.

162.     In essence, Mr. Strine claims the right not to have to go to trial before The Center concerning the conduct that is the subject matter of the E.D. and V.D. complaints to The Center because such conduct is outside of The Center's subject matter jurisdiction.

163.     Plaintiff's "right not to stand trial" is subject to Article III review by this Court prior to The Center proceeding with its adjudicatory process.   See *Axon Enterprise, Inc. v. FTC,* 143 S. Ct. 890, 896 (2023) ("Seeking to stop the administrative proceedings, they instead brought their claims in federal district court.   The question presented is whether the district courts have jurisdiction to hear those suits—and so to resolve the parties' constitutional challenges to the Commissions' structure. The answer is yes.")

164.     It is of no moment that the Code contains a review scheme via arbitration because Mr. Strine claims sound in abridgement of his constitutional rights, he should not be subject to the actions of The Center in the first place, and should not be required to go through that process. *Axon,* supra, 143 S.Ct. at 897 ("The ordinary statutory review scheme does not preclude a district court from entertaining these extraordinary claims.").

165.     The particular constitutional claims brought by Plaintiff are not of the type Congress intended to be reviewed within this statutory structure.   *Thunder Basin Coal Co. v. Reich*, 510 US 200, 212, 114 S.Ct. 771 (1994).

166.     To follow The Center's logic *ad absurdum* to its improper conclusion, The Center claims that its exercise of subject matter jurisdiction is self-determined by its Code, but that logic would

Complaint
Derek Strine v. The United States Center for Safe Sport

mean that The Center claims its Code will foreclose all meaningful judicial review of claims of such constitutional magnitude as those brought by Plaintiff herein. *Thunder Basin,* 510 U.S. at 212-213, 114 S.Ct. 771.

167.    Congress did not intend The Center to be free from all judicial review.

168.    Plaintiff's claims herein address constitutional issues, and thus are wholly collateral to enabling statute's review provisions. *Thunder Basin,* 510 U.S. at 212, 114 S.Ct. 771

169.    Finally, Plaintiff's claims are outside The Center's expertise. *Id.*

170.    Congress rarely allows claims about agency action to escape effective judicial review. See, e.g., *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 670, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986).

171.    Because the claims raised by Mr. Strine herein sound in constitutional principles and allege deprivation of protected core rights, the statutory review scheme of the Code, which allows only for private arbitration and only then judicial review, does not apply to this case. Mr. Strine is entitled to judicial review now of his claims, before undergoing further administrative process. *Axon,* supra, 143 S.Ct. at 900.

172.    Herein, Plaintiff charges The Center is wielding authority unconstitutionally in all or a broad swath of its work, and particularly in the case of subjecting Mr. Strine to its processes and adjudicatory functions. *Axon,* supra, 143 S.Ct. at 902.

173.    A district court has jurisdiction to adjudicate Plaintiff's sweeping constitutional claims. 28 U.S.C. § 1331; *Axon,* supra, 143 S.Ct. at 902.

174.    Mr. Strine is entitled to an injunction because the grievance he advances surfaces at the intersection between the alleged injury and the timing of review.  The harm Plaintiff is being

subjected to is that he is being improperly subjected to unconstitutional authority by The Center which The Center claims is not subject to judicial review.   Mr. Strine suffers harm from having to appear in proceeding before an unconstitutionally insulated Center.

175.    Thus, Mr. Strine claims a "here-and-now injury." *Seila Law LLC* v. *Consumer Financial Protection Bureau,* 591 U. S. ___, 140 S.Ct. 2183, 2196, 207 L.Ed.2d 494 (2020) ("…when such a provision violates the separation of powers it inflicts a 'here-and-now' injury on affected third parties that can be remedied by a court.").

176.    Such an injury will be impossible to remedy once The Center's proceeding are over. While under statutory review scheme an arbitration and then appellate court review would ordinarily follow, herein Plaintiff makes a separation-of-powers claim that The Center is not acting constitutionally.

177.    Mr. Strine is being subjected to a constitutionally illegitimate proceeding, wherein the subject matter jurisdiction of The Center has been unconstitutionally expanded, leading Mr. Strine to be subject to an unconstitutionally by illegitimate decision makers in the form the staff members who initially imposed the Temporary Measures, and then led by an arbitrator appointed to rule on a review of the imposition of the Temporary Measures, triggered by Mr. Strine who has been forced to participate in proceedings before The Center to which he should not be subject.

178.    Once those proceedings have already happened, they cannot be undone, and judicial review of Plaintiff's constitutional claims would come too late to be meaningful. *Axon,* supra, 143 S.Ct. at 9023-904.

179.    Because of the constitutional nature of the claims and accompanying harm that Mr. Strine is asserting, the parties are asserting, and that Mr. Strine is being injured here-and-now by being

subjected to the unconstitutional Center proceedings, no matter the outcome of those proceedings, judicial review and intervention in those proceedings are appropriate now, because Mr. Strine should not have to stand trial now.

180.    Mr. Strine should not have to defer judicial review until after the arbitration because his rights are effectively lost if review is deferred until after the arbitration, to wit: he loses his right not to undergo the complained-of proceedings if he cannot assert that right until after The Center's proceedings are over. Therefore, a District Court can and should review Plaintiff's claims now and enjoin The Center's proceedings. *Axon,* supra, 143 S.Ct. at 904, 906.

181.    The claims Plaintiff has brought herein tests the constitutional propriety of Congress vesting administrative agencies with primary authority to adjudicate core private rights with only deferential judicial review at a later time.   *Axon,* supra, 143 S.Ct. at 904, 906. (Justice Thomas, concurring in result and reasoning ("…when private rights are at stake, full Article III adjudication is likely required. Private rights encompass the three absolute' rights, life, liberty, and property ….") [quotation marks and citation omitted].

182.    Because of the constitutional nature of Plaintiff's claims, and given the underlying facts which forestall the exercise of subject matter jurisdiction by The Center, there is a substantial likelihood that Plaintiff shall prevail on the merits of his claims, and he will suffer irreparable harm should the injunction not be issued.

183.    Further, the remaining factors militate in Plaintiff's favor to grant such injunctions. Because the matter involves a the private nondelegation doctrine and the Vesting Clauses, the factors of "threatened injury outweighs the harm the relief would inflict on the non-movant" and whether the "entry of th[at] relief would serve the public interest." merge when, as here, the

Complaint
Derek Strine v. The United States Center for Safe Sport

government is the opposing party.  Applying those factors, The Center would not be harmed because it is not losing all subject matter jurisdiction, and the interest of the public would be served in preventing the unchecked and unreviewable agency action of which Plaintiff complains.

184.    But even a legitimate governmental interest can be outweighed by the harm The Center imposes on the Plaintiff and the public by its overly-broad exercise of subject matter jurisdiction to infringe core, fundamental constitutional rights, while the State has no legitimate interest in enforcing unconstitutional agency action. Thus the balance of the equities favor Plaintiff's application herein.

185.    Plaintiff is therefore entitled both to a preliminary and permanent injunction preventing The Center from commencing and maintaining proceedings. Temporary or Permanent Measures or similar bans, restrictions, or discipline against Mr. Strine arising from the E.D. and V.D. Complaints.

Wherefore, Plaintiff seeks preliminary and permanent injunctions preventing The Center from commencing and maintaining proceedings and Temporary or Permanent Measures or similar bans, restrictions, or discipline against Mr. Strine arising from the E.D. and V.D. Complaints.

Respectfully submitted,
CHAPMAN LAW GROUP, PLC
*Avery S. Chapman*
Avery S. Chapman, Esq.
FL Bar No. 517321
255 Professional
Suite 100
Wellington, Florida 33414
Tel. 561.753.5996
Fax 561.828-2852
asc@chapmanlawgroup.net

Complaint
Derek Strine v. The United States Center for Safe Sport

teh@chapmanlawgroup.net
andrea@chapmanlawgroup.net